IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

| | |
|---|---|
| KATIE FOREMAN, individually and on behalf of her minor child PARKER FOREMAN,<br><br>Plaintiff,<br><br>v.<br><br>SHANNON V. COUVREUR, M.D., CARROLLTON OBSTETRICS & GYNECOLOGY, LLC and TANNER MEDICAL CENTER, INC.,<br><br>Defendants. | CIVIL ACTION FILE<br>NO.: 3:14-cv-197-TCB<br><br><br>JURY TRIAL DEMANDED |

## COMPLAINT

## JURISDICTION AND VENUE

1.

The Court, pursuant to 28 U.S.C. § 1332, has diversity jurisdiction because complete diversity exists between plaintiff and all three defendants and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. The Court has personal jurisdiction over all defendants because they reside in this judicial district.

2.

Venue is proper in this judicial district, pursuant to 28 U.S. 1391, because the acts on which the complaint is based occurred in this judicial district and Defendants reside in this judicial district.

## PARTIES

3.

Plaintiff Katie Foreman ("Ms. Foreman") is the mother of Parker Foreman, born July 25, 2013. Ms. Foreman is suing in her individual capacity as well as on behalf of her minor child, Parker Foreman. Ms. Foreman and Parker Foreman are citizens of the State of Alabama and are not citizens of the State of Georgia.

4.

Defendant Shannon V. Couvreur, M.D. ("Defendant Couveur") is a physician licensed by the State of Georgia. Defendant Couvreur is a citizen of the State of Georgia and is not a citizen of the State of Alabama.

5.

Defendant Carrollton Obstretics & Gynecology, LLC ("Defendant Carrollton OB/GYN") is a limited liability company organized and existing under the laws of the State of Georgia. Defendant Carrollton OB/GYN's registered agent for process of service is Daniel R. Nelson, M.D., at 156 Clinic Avenue, Carrollton,

Georgia 30117. Defendant Carrollton OB/GYN is a citizen of the State of Georgia and is not a citizen of the State of Alabama.

6.

Defendant Tanner Medical Center, Inc. ("Defendant TMC") is a corporation organized and existing under the laws of the State of Georgia. Defendant TMC's registered agent for service of process is Carroll Crews, 705 Dixie Street, Carrollton, Georgia 30117. Defendant TMC is a citizen of the State of Georgia and is not a citizen of the State of Alabama.

## COUNT ONE

## DEFENDANTS' NEGLIGENT CONDUCT

7.

Ms. Foreman reincorporates paragraphs "1" through "6" as if stated herein.

8.

Ms. Foreman was a patient, for her pregnancy leading to the birth of her son Parker Foreman, of Defendants.

9.

Ms. Foreman was a smoker.

10.

Chronic smoking is known to lower oxygenation to the fetus.

11.

Because Ms. Foreman was a smoker, the fetus was at risk for intrauterine growth retardation.

12.

During the 34th week of Ms. Foreman's pregnancy, an ultrasound ("Ultrasound") was performed of the fetus.

13.

The Ultrasound revealed that the fetus was lagging in growth.

14.

Upon receiving the Ultrasound result, Ms. Foreman should have been referred to a Perinatologist for a consultation.

15.

Defendants Couvreur and Carrollton OB/GYN failed to refer Ms. Foreman to a Perinatologist for a consultation.

16.

Upon receiving the Ultrasound result, a nonstress test ("NST") of the fetus should have been ordered to be taken twice a week.

17.

Problematic NSTs (consistent non-reactive NSTs) would have led a prudent physician to order other procedures to evaluate and protect the fetus.

18.

Defendants Couvreur and Carrollton OB/GYN failed to order NSTs of the fetus.

19.

At the 39 6/7 week of gestation, labor was induced.

20.

A fetus is dependant upon a constant supply of oxygen.

21.

A fetus is unable to store oxygen.

22.

A fetus can tolerate an insufficient oxygen supply for only a brief interval.

23.

A fetus's only source of oxygen is blood delivered to the fetus through the placenta.

24.

Ms. Foreman, during labor, hyperstimulated with too many contractions.

25.

Ms. Foreman, during labor, was given Pitocin.

26.

There is a discrepancy in the medical records about Pitocin.

27.

The typed nursing notes (no page numbers) of "HEH" and "MCP" state that Ms. Foreman was started on Pitocin which was discontinued at 11:37 a.m., restarted at 1:34 p.m., decreased at 6:10 p.m. and discontinued at 7:40 p.m.

28.

The nursing flow sheet (pages 14, 15 and 16) document running Pitocin that was not discontinued until 7:40 p.m.

29.

Pitocin stimulates uterine contractions.

30.

Uterine contractions decrease placental blood flow to the fetus.

31.

Ms. Foreman's excessive uterine contractions increased the risk of hypoxemia to the fetus.

32.

Fetal heart rate (FHR) analysis is the prime means by which a fetus is evaluated for adequacy of oxygenation.

33.

The FHR tracings, during Ms. Foreman's labor, provided warning signs of potential fetal compromises that should have prompted the treating physician to intervene and expedite the delivery.

34.

The FHR tracing at 2:00 PM became very concerning.

35.

When the non-reassuring FHR tracings began, Defendant TMC's nurse(s) should have turned Ms. Foreman's position, given oxygen to Ms. Foreman, increased the IV rate, discontinued the Pitocin and notified the obstetrician.

36.

Defendant TMC's nurses, when the non-reassuring FHR tracings began, failed to do what they should have done to protect the fetus.

37.

The FHR tracing at 2:30 PM became ominous.

38.

The FHR tracings continued to be bad until about 6:30 p.m.

39.

The FHR tracings, at about 6:30 p.m., improved slightly but were not normal.

40.

The medical records indicate that the treating physician was not present with Ms. Foreman between 8:45 a.m. and 6:09 p.m.

41.

The medical records do not indicate that the nurses notified the treating physician about the bad FHR tracings.

42.

The FHR tracings, by 6:40 p.m., were bad again.

43.

Despite the ominous FHR tracings, no effort was made to intervene and expedite the delivery.

44.

Parker Foreman was delivered vaginally at 8:03 p.m.

45.

Defendants, at no time, disclosed to Ms. Foreman the risks and hazards of not intervening and not expediting the delivery of Parker Foreman.

46.

Defendants, during Ms. Foreman's labor, failed to address the critical question: Does anything have to be done for the fetus?

47.

Defendants, during Ms. Foreman's labor, failed to address the critical question: What is the feasibility of a safe vaginal delivery?

48.

A note in the medical records (but not the actual lab report) stated that the fetus' cord gas was 7.02 and base excess was -12.4 at delivery.

49.

The 7.02 cord gas reflects a long standing insult to the fetus.

50.

It is unclear from the note in the medical records whether the cord gas of 7.02 was arterial or venous.

51.

If the 7.02 was venous blood gas, an arterial blood gas would have been lower than 7.02.

52.

The Apgar scores were 4 at one minute and 7 at five minutes.

53.

The Apgar scores are ratings of 0, 1 or 2 for each of the five following characterizations with 10 being a perfect score:

- Heart rate;
- Respiratory effort;
- Muscle tone;

- Reflex to stimulation of the sole of the foot; and
- Color.

54.

Parker Foreman's low Apgar scores are consistent with brain injury.

55.

Parker Foreman has been diagnosed with having encephalopathy.

56.

The Standard of Care, for physicians and nurses, is the care and diligence that a reasonably prudent obstetrician and nurse would provide in like situations and similar circumstances.

57.

Defendants Couvreur and Carrollton OB/GYN, upon receiving the Ultrasound report, breached the Standard of Care by failing to order a consult with a Perinatolgist.

58.

Defendants Couvreur and Carrollton OB/GYN, upon receiving the Ultrasound report, breached the Standard of Care by failing to order NSTs twice weekly.

59.

Defendant Couvreur breached the Standard of Care by failing to timely diagnose and manage the fetal condition that was capable of causing irreversible brain damage.

60.

Defendant Carrollton OB/GYN, under the doctrine of respondeat superior, is responsible for the tortious actions of its employees and agents in connection with Ms. Foreman's pregnancy and her labor and delivery, including but not limited to Defendant Couvreur.

61.

Earlier intervention and delivery would have prevented the brain damage that Parker Foreman suffers and will suffer the rest of his life.

62.

Defendant TMC's nurse(s) breached the Standard of Care by failing to discontinue the Pitcion, when the FHRs became very concerning at 2:00 p.m. and continued the Pitcion until 7:40 p.m., and by failing to communicate with the treating physician.

63.

Defendant TMC, under the doctrine of respondeat superior, is responsible for the tortious acts of its employees and agents including the nurses involved in the labor and delivery of Parker Foreman.

64.

Defendants' breaches of the Standard of Care caused Parker Foreman to suffer permanent brain injury.

65.

Parker Foreman has been diagnosed with having hypoxic ischemic encephalopathy.

66.

The economic consequences of Parker Foreman's brain injury, caused by Defendants' breaches of the Standard of Care, are great.

67.

Parker Foreman's damages include the economic value of the loss of the ability to work caused by Defendants' breaches of the Standard of Care.

68.

Parker Foreman, because of Defendants' negligence, will need medicine and related medical care throughout his life.

69.

Parker Foreman's damages include the costs of medicine and related medical care from the time he becomes 18 throughout the remainder of his life.

70.

Parker Foreman is entitled to recover damages for his lifetime of pain and suffering, humiliation and inconvenience etc.

71.

Ms. Foreman's damages caused by Defendants' breaches of the Standard of Care include the costs of medical care that Parker Foreman will need until he becomes 18.

72.

Ms. Foreman's damages caused by Defendants' breaches of the Standard of Care include the costs of caring for a brain-injured child until the child becomes 18.

73.

The Georgia statute (O.C.G.A. 9-11-9.1), requiring an affidavit to be filed with the complaint in support of a claim for professional negligence, is a procedural rule that does not apply to diversity cases in federal court.

74.

Plaintiff, without waiving her position that the Georgia expert affidavit statute does not apply to this diversity action, attaches as Exhibit "A" Julie H. Zimmermann, M.D.'s affidavit in support of Ms. Foreman's complaint.

Wherefore, Ms. Foreman requests the Court to enter a judgment against Defendants:

(A) Awarding Ms. Foreman, in her individual capacity, compensatory damages in an amount to be determined by the jury;

(B) Awarding Ms. Foreman, on behalf of her minor child Parker Foreman, compensatory damages in an amount to be determined by the jury;

(C) Awarding Ms. Foreman all allowable costs of litigation; and

(D) Awarding Ms. Foreman whatever other relief the Court deems just and proper.

75.

Ms. Foreman demands a jury trial.

**GARY BUNCH, P.C.**

By: /s/ Gary Bunch
Gary Bunch
Georgia Bar Number 094612
Attorney for Plaintiff Katie Foreman

527 Tanner Street
Carrollton, Georgia 30117
(770) 836-0405
December 11, 2014